[Civ. No. 41621. Second Dist., Div. One. Aug. 17, 1973.]

ARTHUR L. WECHLO, Plaintiff and Appellant, v.
DONALD G. WINYARD, Defendant and Respondent.

COUNSEL

Rosswell Bottum, W. C. Miller and Leslie A. Kast for Plaintiff and Appellant.

Ball, Hunt, Hart, Brown & Baerwitz, Robert E. Aitken and Richard C. Goodman for Defendant and Respondent.

## OPINION

**LILLIE, J.**—This cause of action arose out of an automobile-pedestrian collision on East Anaheim Street in the Wilmington area. Plaintiff appeals from judgment in defendant's favor entered on a jury verdict. The sole issue before us involves the trial court's refusal to give plaintiff's requested instruction on last clear chance (BAJI No. 4.20).

Viewing the evidence in a light most favorable to plaintiff's case (*Bone-brake* v. *McCormick,* 35 Cal.2d 16, 19 [215 P.2d 728]), we summarize the relevant facts: the accident occurred between 7:30 and 8 on the evening of August 9, 1971, when plaintiff, an elderly man (about 84 years of age), started across Anaheim in the middle of the block and approximately 250 feet from the nearest available crosswalk (at Banning and Anaheim) where there was a traffic control signal. At that point Anaheim has four traffic lanes, two eastbound and two westbound, together with two curb lanes for parking; street lights on both sides of Anaheim were on, and according to the police report, the accident occurred when it was nighttime and in a business district.

The actual impact was witnessed by Henry Cantrell and Mrs. Francie Wasowski, both of whom were called by plaintiff. Mr. Cantrell was driving west on Anaheim near its intersection with Banning; upon reaching Banning and proceeding through the green signal, he first observed plaintiff (who was then about 200 feet ahead) entering the westbound lane of Anaheim from the traffic side of the curb lane. According to Cantrell, who slowed down almost to a stop to let him pass, plaintiff was dressed in dark clothing and walking "hurriedly" across the street; when Cantrell first saw defendant's car, after his initial observation of plaintiff, it was about three blocks away in the eastbound lane next to the center line and traveling at a speed of 50-60 miles per hour; he continued to watch defendant's car as it continued eastward toward the scene of the impending accident at the same speed (50-60 miles per hour); it commenced to slow down when it reached a point about three car lengths from plaintiff and, after changing lanes, struck him when he was about three feet (a car's width) from the cars parked in the curb lane. Cantrell testified that at the moment of impact the speed of defendant's vehicle was about 40 miles per hour, and plaintiff was thrown about 30-40 feet. At no time during the foregoing series of events was defendant's vision obstructed by other cars, either on his right or left.

Mrs. Francie Wasowski was also eastbound on Anaheim under light traffic conditions—about 250 feet behind defendant; at that distance she too observed the plaintiff who was then about 10 to 15 feet from defendant's car and moving at a fast walk or a trot; plaintiff was wearing a white shirt, dark pants and dark shoes; she did not see him stop or look instead, he maintained the same gait until he was hit by defendant's car. All the observations were made within a period of seconds; Mrs. Wasowski was unable to state with certainty which lane of traffic either she or the defendant was using.

Plaintiff did not testify; while he was ambulatory at the time of trial, there was evidence that he had sustained a concussion resulting in memory lapse and, also, that he had lost control of his bladder and bowels.

Called as an adverse witness (Evid. Code, § 776), defendant testified that the accident occurred after dark at about 8 p.m. He had driven that particular portion of Anaheim several times in the past and was familiar with the area; on the night in question, he entered Anaheim more than a mile from the point of impact. His testimony having been given at a previous deposition, he corrected such testimony in two respects: he did not see the plaintiff until immediately prior to the impact when he immediately applied his brakes (in his deposition he said he never saw the pedestrian); as he traveled through the block before the one where the accident occurred, he saw other vehicles on the street (in his deposition he said there were no other such vehicles). Commencing about one block from the point of impact, defendant further testified he never took his eyes off the road; however, he had "no idea" how far he was from plaintiff when he first saw him.

Officer Rodgers testified to the contents of the police report which he prepared; according thereto the accident occurred 200 feet west of the west curb of Banning and 10 feet north of the south curb of Anaheim; street lighting was good at that point and for several blocks on Anaheim both east and west; defendant, who was interviewed by Rodgers, stated that he was going about 35-40 miles per hour; defendant's car left about 30 feet of "brush" (broken or intermittent) skid marks prior to the point of impact with plaintiff.

 A requested jury instruction on last clear chance must be given if there is evidence of each of the following elements: (1) plaintiff negligently placed himself in a position of danger; and (2) defendant had actual or constructive knowledge that plaintiff could not escape from such a situation and (3) after that time had a last clear chance to avoid the accident. (*Brandelius* v. *City & County of S. F.*, 47 Cal.2d 729, 740 [306 P.2d 432].) While it is improper to read the instruction if one or more of the foregoing are lacking, nevertheless it " 'must be given whenever there is substantial evidence *tending* to establish each of its elements, even though it may be equally reasonable to conclude from the evidence that the elements of the doctrine have not been established. [Citation.]' " (Italics added.) (*Desherow* v. *Rhodes,* 1 Cal.App.3d 733, 746 [82 Cal.Rptr. 138].) Too, as noted by us at the outset and again in *Desherow,* " 'the evidence must be viewed in the light most favorable to the application of the doctrine, including every reasonable inference in support thereof.' " (*Supra,* p. 746.) We have concluded that the circumstances measured by

the foregoing rules dictate the giving of the instruction even though, as ably argued by defendant, it might have been equally reasonable to conclude otherwise.

The cases have amplified the first of the three elements or factors, *supra,* by noting that plaintiff's "position of danger" must be one from which he cannot escape by the exercise of ordinary care either because of some physical impossibility or plaintiff's unawareness of his danger. (*Brandelius* v. *City & County of S. F., supra,* p. 740.) The record supports the inference that plaintiff was at least totally unaware of the approach of defendant's car; and had he been aware of defendant's car, it posed a danger from which, at his age, he could not have escaped even by the use of ordinary care. According to Mr. Cantrell, plaintiff was attempting to cross the street against the flow of traffic some 200 feet from the nearest available crosswalk; according to Mrs. Wasowski, he neither stopped nor looked as he proceeded across the street. Defendant, however, contends that no proof was adduced to indicate that plaintiff was "totally unaware" of the impending danger; plaintiff did not testify and, according to defendant, a favorable finding based on the testimony of plaintiff's witnesses (above summarized) would be sheer conjecture. We disagree. In our view it is enough if the circumstances were such as to persuade a reasonable person (by the drawing of a necessary inference) that plaintiff was totally unaware of his dangerous predicament.

An inference properly drawn from circumstantial evidence will likewise support a finding relative to the second element, namely, defendant's knowledge of plaintiff's perilous situation. "Evidence that the defendant could plainly have seen the peril if he had looked is sufficient to support the necessary inference of knowledge. [Citations.]" (*Forwood* v. *Sutton,* 4 Cal.App.3d 342, 348 [84 Cal.Rptr. 382].) The cited case also holds that knowledge of plaintiff's peril justifies the inference that the defendant knew of plaintiff's inability to escape therefrom. Defendant testified that he was looking straight ahead just before the happening of the accident, that there were no cars on his right or left to obstruct his view and that nothing caused him to take his eyes off the road until the collision occurred. The jury had the right to disbelieve or believe whatever portions of defendant's testimony it chose, including such portions of his testimony which were corroborated in substance by plaintiff's witnesses (Cantrell and Wasowski). According to Cantrell, defendant was about three blocks away when plaintiff started across the street—56 feet in width from curb to curb, as disclosed in the police report; Mrs. Wasowski, who was behind defendant in a following car, saw the plaintiff when she was about 250 feet away. Thus, there is evidence that plaintiff's position was plainly visible to defend-

ant had he looked; in such circumstances, it would support the necessary inference of knowledge as well as plaintiff's inability to extricate himself.

This brings us to the third element—the last clear chance to avoid the accident. If the jury were to infer, as they properly could have done, that plaintiff's jaywalking was observed by defendant at the distances testified to by Cantrell and Wasowski, he had several seconds within which to react to the impending danger. Instead of maintaining his course in the lane next to the dividing line, he swerved his car (according to Mr. Cantrell) into the lane being traversed by plaintiff—next to the parking lane. Had he remained in the lane next to the dividing line, no accident would have resulted. The instant case, contrary to defendant's assertion, is not apposite to *Kaake* v. *Lott,* 252 Cal.App.2d 895 [60 Cal.Rptr. 843]. In *Kaake* defendant actually saw plaintiff-cyclist about 400 feet ahead of her and took the wrong evasive action when he turned in front of her, while here there was evidence that plaintiff was walking straight across the street and should have been seen by defendant for a period of time longer than in *Kaake.* Further, it seems to be conceded that the application of the doctrine depends upon the facts of each particular case.

Finally, it cannot be said that the erroneous refusal to give the instruction can be cured by applying the provisions of article VI, section 13, California Constitution. After some deliberations, the jury asked to be instructed again on negligence and contributory negligence; having been so instructed (without the benefit of the instruction on last clear chance), they soon thereafter returned a defense verdict by a 9-3 vote.

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 10, 1973.